## Tiernan *et al. v.* Commercial Bank of Natchez.

A bank which receives a note for collection, and, when it is overdue, places it in the
  hands of a notary in time for demand and protest, is not liable for the neglect of the
  notary to give notice; it being a part of his duty to give notice.

In cases where the agent is compelled to employ a sub-agent, the agent will not be
  responsible for the negligence or misconduct of the sub-agent, if he has used reason-
  able diligence in his choice as to the skill and ability of the sub-agent.

In undertaking to collect for others, a bank becomes an agent, and is understood to con-
  tract for reasonable skill and ordinary diligence.

IN ERROR from the circuit court of the county of Adams.

This was an action of assumpsit by Tiernan, Cuddy & Co.
against the Commercial Bank, in the circuit court of Adams coun-
ty, to recover from the bank the amount, with interest and dama-
ges, of a bill of exchange of W. R. Stone on M. D. Patton, for four
thousand four hundred and seventeen dollars and thirty-five cents,
accepted and dated May 6, 1836, at sixty days, on the ground that
the bill had been sent to the Commercial Bank for collection, and
that through the neglect or death of the notary, in whose hands
the bill was placed to demand payment, protest, &c. plaintiffs
failed to recover the amount in a suit against *Stone* on the bill.
Plea *non assumpsit*, with leave to give any special matter in
evidence.

Upon the trial it appeared in evidence that the note was sent by
the Bank of Orleans to the Commercial Bank for collection.  Mr.
Henderson, the cashier, stated he considered it the property of the
Bank of Orleans; he knew nothing of Tiernan, Cuddy & Co. in
any way in the transaction; that the Commercial Bank placed it
in proper time in the hands of a notary for demand of payment,
protest, &c.; and that the duty of the bank ceased, according to
his understanding, as well as the usage and custom of the banks

Tiernan *et al. v.* Commercial Bank of Natchez.

in Natchez and New Orleans, as soon as it was thus put in the hands of a notary; the bank was then discharged; and that this was recognized by the Bank of Orleans, to whom the bill was returned after protest, with the notice, and protest fee paid, &c.

There was a verdict for the defendant.

The court below gave all the instructions asked by plaintiffs' counsel, and to those given on behalf of defendant, plaintiffs excepted, which exceptions, with that overruling their motion for a new trial, present the grounds relied on by plaintiffs for a reversal.

1. That if the plaintiffs employed the Bank of Orleans as their agent for the collection of the bill, and that bank employed the Commercial Bank as her agent to collect for her as the holder of the bill, and that, in discharge of that duty, the Commercial Bank observed the usual custom and usage as recognized by the Bank of Orleans, then the Commercial Bank is discharged from liability in this action.

2. That if the Bank of Orleans was the holder of the bill at its maturity, and the Bank of Orleans, as the *bona fide* holder, left it with the Commercial Bank for collection, plaintiffs cannot recover.

3. That if the bill was lodged by the Bank of Orleans with the Commercial Bank for collection, and did all that was usual, and so acknowledged by the Bank of Orleans, the Commercial Bank is discharged.

HOLT for plaintiffs in error.

The bill of exchange mentioned in the pleadings was deposited with the Bank of Orleans for collection, by plaintiffs in error, the then holders. The Bank of Orleans transmitted it for collection to the Commercial Bank of Natchez. This state of facts is assumed, and correctly, by the instruction given to the jury at the instance of defendants; which instruction, in other particulars incorrect, is assigned for error in this court.

That the Commercial Bank of Natchez, by receiving the bill for collection from the Bank of Orleans, became the agent of the holders, whoever they might be, and as such are liable to them, although unknown to them, is well settled. 1 Pet. 25; 9 Wend. 46; 11 Wend. 473.

Being the agents of Tiernan, Cuddy & Co. they were bound, after receiving the bill for collection, to have it duly presented; and, if dishonored, to have it duly protested, and to send immediate notice to the holders, in order that they might give notice to such of the parties to the bill as they desired to charge. A neglect in any of these particulars, by means of which the holder's resort to the parties on the bill is lost, would render the bank liable to an action by the holders for the negligence. Bayley, 250; 1 Pet. 25; 20 John. 372; 3 Cow. 662; Miranda *v.* City Bank of New Orleans, 6 Louis. R. 740; 7 Martin, 460; 1 Martin, (N. S.) 214, 364–5–8.

The defendants insist, however, that they discharged their duty as agents, when they placed the bill in the hands of a notary, and that, for his default in not notifying the parties, they are not responsible. This position cannot be sustained. The Supreme Court of Louisiana, in Montillet *v.* U. S. Bank, 1 Martin, (N. S.) 364–5–6, hold this emphatic language: "The bank is responsible for the conduct of the persons they employ. The notary, in undertaking to give notice, did so as a private individual. It is no part of his official duties." The bank was accordingly held liable for his neglect in not giving notice so as to charge the parties to the bill.

This doctrine was again examined and re-asserted in Miranda *v.* City Bank of New Orleans, 6 Louis. R. 740–4.

Were it the official duty of the notary to notify the parties to a bill or note, of its protest, it might be insisted, with some plausibility, that a bank, in placing paper in his hands for that purpose, would acquit itself of liability to the holder. *But it is* well known that, although a notary may give notice if he chooses, he is under no·obligation to do so; and that the act, when thus performed by him, is that of a private agent, and not of a public officer. Bernard *v.* Planters' Bank, 4 How. 98.

The bank, then, selects and confides in him for the performance of this unofficial act at its peril. This doctrine is recognized, without qualification,· in Thompson *v.* Bank of South Carolina, Riley's Law Cases, 81–2.

The defendants further insist, that although upon general principles of law they might not be discharged from liability, by

Tiernan *et al. v.* Commercial Bank of Natchez.

merely placing the bill in the hands of the notary for protest, &c. yet they must be so discharged in consequence of a particular usage or custom to that effect, existing and recognized between the Bank of Orleans, and the Bank at Natchez. Custom cannot change the law. Wilcox and Fearn *v.* McNutt, 2 Howard, 785. It is only resorted to by courts for the purpose of interpreting the contracts of parties who were conusant of such custom, and are supposed to have stipulated in reference to it. 4 Mass. Rep. 252. Supposing, then, such usage or custom to have been shown to have existed between the Bank of Orleans and the Commercial Bank of Natchez, (which is by no means admitted,) yet the right of the plaintiff in error cannot be affected by it, because it is not proved or pretended that they recognized any such custom, or had any knowledge of its existence. The Bank of Orleans was their special agent, constituted for a specific purpose, the transmission of the bill for collection, and could not compromit their rights, by subjecting them to the blight of a usage so strange and extraordinary.

The instruction assigned for error was abstract and gratuitous, in saying to the jury, "if they believed the Bank of Orleans employed the defendants as their agent to collect said bill, representing to them that the said Bank of Orleans was the holder," &c.

There was no testimony proving, or tending to prove that any such representation was made by the Bank of Orleans to defendants. This charge was well calculated to mislead the jury, and exercise an influence over their minds fatal to plaintiffs' right of recovery. It was an intimation, (to say the least of it,) from the court, that there was such testimony in the cause, and that defendants in consequence of such representation, had been induced to conform to the particular usage spoken of by the witness. Authority need not be cited to show that a charge unwarranted by the testimony is ground for reversing the judgment.

QUITMAN and McMURRAN, for defendant.

If the Commercial Bank observed the usual custom recognized in New Orleans and Natchez, and expressly agreed to by the Bank of Orleans, nothing more could be required. She had discharged her duty according to the established custom and the positive

understanding with the bank who sent her the note for collection. The testimony and the instructions are conclusive in favor of the Commercial Bank, even if the Bank of Orleans were the plaintiff. And such a custom as this, so clearly established, and proved expressly to be recognized by the Bank of Orleans, will be fully sustained by this court. 9 Wheat. Rep. 581, Remier *v.* Bank of Columbia.

But again, the general principles of law, as applicable to this case are decisive in favor of our position. The following authorities are directly in point: Story's Equity, 189; Miles' Penn. Rep. 173; Belmere *v.* U. S. Bank, 17 Louis. Rep. 560, 563; Hyde and Goodrich *v.* Planters' Bank; cases in which similar recoveries were attempted of banks and failed. So the case in 20 Johns. Rep. 378, recognizes the same doctrine, and in that case held the bank liable on the ground that she put the note in the hands of her own clerk, and not in the hands of a sworn public officer or notary. In that case, too, it was the custom of the banks to give notice; so, too, it is the official duty of the notary to give notice. Act of 1833; 6 Serg. & Rawle, 484; 17 Louis. Rep. 563.

But these plaintiffs have not a shadow of claim whatever. The Commercial Bank never knew them in the business, she was not their agent, and there is no privity whatever between them upon which the action could be sustained. If the bank of Orleans owned the bill at the time, and plaintiffs were notified, it was their business to notify Stone, and if they were not notified they had no business to pay it. If they placed it in the hands of the Bank of Orleans for collection as their agent, they can resort alone to that bank and the notary for redress. 2 John. Reports, 204, Morgan *v.* Van Ingen.

WINCHESTER, in reply.

1. Is a bank, to which a note is transmitted for collection, whose custom and usage it is to employ a notary public to protest and give notices of dishonor to indorsers, responsible to the holder or owner of such note for a neglect to give notice?

The evidence in the case of Mr. Henderson in the bill of exceptions to overruling the motion for a new trial is full, that it was the custom and usage of the banks of Natchez, and of the Com-

mercial Bank, to employ notaries to give notices, and to instruct them to give notices, and where a notary could not be had to give notices to employ other agents for that purpose.

That the bank is liable for such neglect to give notice is the well-settled rule of law in England and America. See 20 Johnson's Rep. 372; 3 Cowen, 663; 9 Wendell, 46; 11 Wendell, 473; 1 Peters, 25, 50; Bayley, 250; 6 Louis. Rep. 740; 7 Martin, 460; 1 Martin N. S. 214, 364–5–8.

But it is said, the bank employing a notary public as its agent to give the notices, the notary public and not the bank is liable for the neglect to give notice. How far this might be true, if the law made it a part of his official duty to give notice, so as to make him as a public officer, and his securities for him on his official bond, answerable for failing or refusing to perform the duty when required, is unnecessary to inquire. For clearly it is no part of his official duty to give the notice, and if he were to refuse to perform this service for the bank, and should upon protesting return the note to the bank and decline the service of giving notices, leaving the bank to employ other agents for that service, the bank could not make him and his securities responsible for such refusal as a breach of his official duty. Morgan *v.* Van Ingen, 2 Johns. Rep. 204; 4 Howard, 104.

If it were a part of his official duty to give notices, then his notarial act would be the only evidence of notice, as in the case of the protest of a foreign bill, the notarial act is the only evidence by which demand and refusal can be proved. Homes *v.* Smith, 16 Maine, 183. By the well-settled rule of law, the bank being responsible *to the* holder for failure to give the notice.

2. "Is the bank discharged from that liability in this case, 'by the belief of Mr. Henderson that it was understood and recognized between the Natchez and New Orleans Banks, to be the custom and usage, that the bank discharged its duty, when it placed the note in the hands of a notary public to protest and give the notices, and that the Bank of New Orleans recognized the usage and custom in this case by paying the expenses of protest."

Will a general understanding and recognition among the Natchez and New Orleans banks, that a bank employed to collect a note discharges its duty when it places a note in the hands of

a notary to protest and give notice, operate to discharge the bank from its liability for neglecting to give notice?

We might admit that the bank does discharge its duty according to custom and usage, when it places a note in the hands of a notary to protest and give notices, and yet if he, as agent for the bank, neglects to give the notices, it is utterly impossible to perceive how such discharge of its duty by the bank will discharge it from the consequences of a neglect to perform a still further duty, to wit, that of causing the notices to be given. Yet the charge given is, that if the defendants observed the custom and usages usual in the transaction of such business, and recognized as customary by the said Bank of New Orleans, then said defendants are discharged. And this evidence of Mr. Henderson, of a custom and usage to consider a bank as having discharged its duty by leaving the note with the notary to protest and give notice, which custom was recognized by the New Orleans Bank, is the only evidence to which the charge can relate, as there was no evidence that the bank or its notary ever gave the notices, or observed the custom and usage in any other respect.

Taking the charge in connection with the evidence, the court undoubtedly intended the jury to understand that if they believed from this testimony of Mr. Henderson, that by custom and usage it was understood between the Natchez and New Orleans banks that they should not be liable for neglect to give notice when they employed a notary, and that this custom and usage was recognized in this case by the New Orleans Bank paying the protest, then the jury were misled by the charge.

1. For the evidence of Mr. Henderson establishes no such custom, and it ought not to have been left to the jury to infer such a custom.

2. And if it amounts to any thing more than its literal meaning, to wit, "that the bank discharges its duty by employing a notary," and be construed discharges its whole duty, so as not to become responsible for neglect to give notice, even then it is bad; because such evidence of custom cannot be set up against law. Allen *v.* Merchants' Bank of New York, 15 Wend. 488, 489; 2 Burr. 1216, 21; Chitty on Bills, 37, 95, 110; 2 Douglass, 635, n.; Stone *v.* Rawlinson, Welles, 559; 2 How. 785; 4 Man. 252.   Be

sides, it is mere opinion of Mr. Henderson. 20 Johns R. 372. And at most, it is a custom of banks to understand they are not liable for neglect, which the law says they are liable for, and to fix a knowledge of that custom upon the New Orleans Bank, by inference from the fact that it paid the expenses of protest, which inference is not warranted from the fact.

If the charge of the court below was erroneous, and the jury misled by it, as is evident, then the judgment ought to be reversed for this error.

As to the other error assigned, if this court should be of opinion that a bank is not liable for a neglect to give notice when it employs a notary as its agent, then it is not contended there was any error in overruling the motion for a new trial. But if the bank is liable for such neglect, then it was also error to overrule the motion; if for no other reason, because the charge of the court had misled the jury.

The letter from the cashier of the Bank of New Orleans to the cashier of the Commercial Bank, from which Henderson derived all his knowledge of who was the owner of the note, has been lost or mislaid from the papers, the clerk states in the record. It is admitted, however, that the letter merely enclosed the note, with several others, to the Commercial Bank for collection, without mentioning any thing about the ownership. Mr. Henderson's belief, that they were owned by the Bank of New Orleans, was founded upon their being indorsed by the cashier of that bank. But this is so customary with notes deposited in one bank to be forwarded to another for collection, as to afford no evidence of the actual ownership. See Bank of Washington *v.* Triplett, 1 Peters, 25, 50.

The return of the note by the bank at New Orleans to the plaintiffs, was evidence that the note was theirs, and indorsed for the mere purpose of collection. But whether the jury would have found the fact of ownership in the plaintiffs, or not, upon the evidence, is of no consequence to inquire, if the charge of the court was erroneous and calculated to mislead them upon the other facts in the case; nor is it necessary to inquire whether in point of law it would make any difference, as the question does not arise as the case is now presented. And the evidence was

such as would have warranted the jury in finding the fact either way, perhaps, without such finding being of itself and alone considered sufficient to entitle either party to a new trial.

Mr. Justice CLAYTON delivered the opinion of the court.

In our view of this case, the only question necessary to be considered is, whether a bank which receives a bill for collection, properly discharges its duty, if the bill is not paid, by placing it in the hands of a notary, to protest and give the requisite notices. In other words, whether if the notary fails to give the proper notices, the bank is liable for such failure.

In the performance of this duty of collection, as well as of all other acts, a bank of necessity depends upon agents. It has no capacity to act of itself, and can perform none of its acts but through the instrumentality of agents. In undertaking to collect for others, a bank becomes an agent, and is understood to contract for reasonable skill and ordinary diligence. By reasonable skill we are to understand such as is, and no more than is, ordinarily possessed and exercised by persons of common capacity, engaged in the same business or employment; by ordinary diligence that which persons of common prudence are accustomed to use about their own business and affairs. Story on Agency, 172. In many cases, it becomes necessary, and is usual for the agent to employ a sub-agent to transact the business. A bank cannot do it in any other way, for its own officers are but its agents. In these cases the agent will not ordinarily be responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice as to the skill and ability of the sub-agent. Story on Agency, 190.

The application of these principles will be decisive of this case. The bank selected as its sub-agent a notary public, an officer created for the public convenience, and whose most familiar and important duty it is, to protest dishonored paper, and to give notice to all the parties interested. It is in proof that the bank pursued the same course precisely with its own paper, which it took in reference to this bill. An agent is rarely if ever required to exert greater diligence as to his agency, than he bestows on his own private affairs. Story on Agency, 175.

Tiernan *et al. v.* Commercial Bank of Natchez.

In this state a notary is authorized to give notice, as well as to make protest, and no agent could have been selected by the bank with more propriety for the performance of this duty, than one whose profession and office were calculated peculiarly to fit him for its discharge. They are almost universally resorted to for the purpose. We cannot perceive, therefore, that the bank was wanting either in the degree of skill or diligence, which is required under such circumstances, to exempt an agent from liability.

We are fortified in this conclusion by the case of Bellemire *v.* Bank of United States, 1 Miles, 173, affirmed upon appeal. 4 Wharton, 105. It is held in that case that a "bank which receives a note for collection, and when it is overdue places it in the hands of a notary in the usual course, is not liable for the neglect of the notary to give notice." Precisely the same principle is established in the case of Hyde and Goodrich *v.* Planters' Bank of Mississippi, 17 Louisiana Rep. 560. This case is based in part upon the same statute of this state, which is applicable to the present cause, and which gives authority to the notary to notify the parties. See also Bank of Utica *v.* Smedes, 20 Johns.

The judgment will be affirmed.